Dick BARCLAY, Director, Arkansas Department
of Finance and Administration *v.*
FARM CREDIT SERVICES, *et al.*[1]

99-1432                                        8 S.W.3d 517

Supreme Court of Arkansas
Opinion delivered January 13, 2000

---

[1] The certiorari petition filed in this court refers to "Farm Credit Services," but the mandamus petition in chancery court and the case pending before the United States Supreme Court refer to "Farm Credit Services of Central Arkansas." We treat them as the same party.

*Beth B. Carson*, Chief Counsel, and *Martha Hunt*, for petitioner.

*Nichols & Campbell*, by: *Mark W. Nichols*, for respondents.

ROBERT L. BROWN, Justice. The matter before this court is a petition for writ of certiorari filed by Dick Barclay, Director, Arkansas Department of Finance and Administration

(DFA). The respondents are Farm Credit Services of Central Arkansas, PCA; Farm Credit Services of Western Arkansas, PCA; Eastern Arkansas Production Credit Association; and Delta Production Credit Associations (the PCAs). The issue raised involves the propriety of a writ of mandamus issued by the chancery court to restrain counsel for DFA from representing the State of Arkansas before the United States Supreme Court. We dissolve the writ of mandamus due to lack of jurisdiction in the chancery court to issue the same.

On July 1, 1999, this court affirmed the summary judgment entered by the Pulaski County Chancery Court in favor of the PCAs because the PCAs were entitled to immunity from the state sales tax and income tax due to their status as "federal instrumentalities." *See State v. Farm Credit Services of Central Arkansas,* 338 Ark. 322, 994 S.W.2d 453 (1999). Throughout that litigation, the State was represented by Martha Hunt, legal counsel for DFA. On July 16, 1999, the State, which continued to be represented by Martha Hunt, moved this court to stay its mandate pending the resolution of its petition for writ of certiorari in the United States Supreme Court. This court stayed its mandate on September 9, 1999, over the objection of the PCAs.

On November 23, 1999, the PCAs filed a petition for writ of mandamus. In that petition, they prayed that the Pulaski County Chancery Court order DFA to refrain from acting in violation of Ark. Code Ann. § 25-16-703(a) (Repl. 1996). Section 25-16-703(a) reads that the Attorney General shall represent the State of Arkansas before the United States Supreme Court. The PCAs prayed that the DFA's legal counsel be stopped from filing the petition for writ of certiorari in that court or, if it already had been filed, be directed to withdraw it. On November 24, 1999, the chancery court orally granted the PCAs' petition for mandamus. The matter was then transferred to another division of the chancery court due to the recusal of the first chancellor. A motion for reconsideration was filed by DFA on December 3, 1999. Attached to the motion was correspondence from the Attorney General in which he declined to act as counsel and a letter from Governor Huckabee appointing Martha Hunt as counsel. On December 8, 1999, the new chancellor denied DFA's motion for reconsideration and issued the writ of mandamus.

Also, on December 8, 1999, DFA filed its petition for certiorari in this court as well as a motion for expedited consideration and an application for temporary relief. In the application for temporary relief, DFA requested that this court stay the mandamus order so that DFA's legal counsel could proceed with the petition before the United States Supreme Court. The deadline for docketing that petition was December 13, 1999. By *per curiam* order handed down on December 10, 1999, we temporarily stayed the chancery court's writ of mandamus in order to permit the certiorari petition to be docketed in the United States Supreme Court, and we ordered the parties to brief (1) the merits of DFA's petition in this court, and (2) the basis for the chancery court's jurisdiction to issue a writ of mandamus. On December 13, 1999, DFA's petition for writ of certiorari was docketed in the United States Supreme Court.

■ We turn first to the matter of the chancery court's jurisdiction to issue a writ of mandamus in this case to prevent DFA's counsel from representing the State. This court is obligated to raise issues of subject-matter jurisdiction on its own, and we do so in this instance. *See, e.g., Hoyle v. Faucher,* 334 Ark. 529, 975 S.W.2d 843 (1998).

When this court asked for briefs on the question of the chancery court's jurisdiction, the parties briefed the issue of whether the chancery court had in fact issued a writ of mandamus, or whether it, in reality, had issued an injunction to prevent a public official from committing an *ultra vires* act. *See Villines v. Lee,* 321 Ark. 405, 902 S.W.2d 233 (1995). We do not address that issue, because we conclude that the chancery court had no jurisdiction to take the action it did pertaining to *State v. Farm Credit Services of Central Arkansas, supra,* on December 8, 1999.

■ It is axiomatic that this court takes jurisdiction of a matter once the record on appeal is filed with the Clerk of the Supreme Court. *See, e.g., Heigle v. Miller,* 332 Ark. 315, 965 S.W.2d 116 (1998); *In re Morgan,* 310 Ark. 220, 833 S.W.2d 776 (1992). This court loses jurisdiction to the trial court once the mandate is issued from this court to the trial court. *See First Pyramid Life Ins. Co. of Am. v. Stoltz,* 312 Ark. 516, 849 S.W.2d 525 (1993); *Brimson v. Brimson,* 228 Ark. 562, 309 S.W.2d 29 (1958). A mandate is the official notice of the action taken by the appellate court. 5 AM. JUR. 2D, Appellate Review § 777 (1995). The mandate is directed to the

trial court, and it instructs that court to recognize, obey, and execute the appellate court's decision. *Id.* In the instant case, the mandate had been stayed by this court, which had the effect of preventing reinvestment of jurisdiction in the chancery court. Accordingly, the chancery court had no jurisdiction to act in *State v. Farm Credit Services of Central Arkansas, supra.*

The remaining question then is whether the PCAs could file a new mandamus action subsequent to the mandate's stay to prevent counsel from representing the State in its petition for certiorari before the United States Supreme Court in *State v. Farm Credit Services of Central Arkansas, supra.* Stated differently, was the new mandamus action truly a separate case from the primary litigation, or was it a procedural maneuver to prevent the certiorari petition from being heard by the United States Supreme Court?

■ We conclude that the mandamus action and resulting writ were so intertwined with the primary litigation as to be part and parcel of it. The stated prayer for relief in the mandamus petition was to prevent DFA's counsel from representing the State in the case before the United States Supreme Court. Indeed, at the time DFA petitioned this court for a writ of certiorari on December 8, 1999, the Attorney General had already declined the invitation to represent the State and Governor Huckabee had appointed Martha Hunt as counsel to represent the State before the United States Supreme Court, under the authority of Ark. Code Ann. § 25-16-702(c) (Repl. 1996). Thus, the effect of the chancery court's writ of mandamus was to thwart the State's certiorari petition from being docketed in the Supreme Court in *State v. Farm Credit Services of Central Arkansas, supra.*

■ Moreover, the appropriate avenue for relief to resolve the legal counsel issue would have been a petition filed before this court at the time the mandate was stayed. The PCAs were aware that the mandate was stayed on September 9, 1999, and would continue to be stayed pending resolution of the certiorari petition before the United States Supreme Court. Yet, the PCAs failed to petition this court for relief under § 25-16-703(a), when it was clear that this court retained jurisdiction over the matter and that the chancery court had no authority to act. Instead, the PCAs waited to file the mandamus petition until almost three months after the mandate was stayed. We cannot countenance a mandamus action brought under

these circumstances to derail appellate review of a certiorari petition filed in the United States Supreme Court.

We hold that the chancery court lacked subject-matter jurisdiction to issue the writ of mandamus in this matter.

Writ dissolved.