Gail PARKERSON *v.* James ARTHUR, M.D., Allan Gocio, M.D., and Hot Springs Neurosurgery Clinic, P.A.

CA 02-1054                                                  125 S.W.3d 825

Court of Appeals of Arkansas
Division III
Opinion delivered October 22, 2003

*Appellant*, pro se.

*Friday, Eldredge & Clark L.L.P*, by: *Jason B. Hendren*, for appellees.

OLLY NEAL, Judge. This is the second time that this medical-negligence action has been before this court. Following remand, the trial court granted appellees' motion for summary judgment on appellant's informed-consent and medical-battery claims. We affirm.

On March 20, 1990, appellees Dr. James Arthur and Dr. Allan Gocio performed an anterior cervical diskectomy and fusion surgery on appellant Gail Parkerson. During the surgery, appellees used an artificial block as graft material to surgically join appellant's vertebrae. The graft material used by the appellees was a product called "Orthoblock," which is a ceramic material made of a dense form of hydroxylapatite. Orthoblock, at the time of the procedure, had neither been developed by its manufacturer, Calcitek, Inc., nor approved by the Food and Drug Administration (FDA), for use in anterior cervical diskectomy procedures. Following the surgery appellant began to experience pain in her left arm and shoulder, and she was diagnosed on April 9, 1990, with postoperative cervical nerve root swelling and pain. Thereafter, appellant received pain medication prescribed by Dr. Gocio and was readmitted to St. Joseph's Regional Health Center for physical therapy and pain control.

On June 15, 1992, appellant filed a medical-negligence suit against appellees alleging that they were negligent in their March 20, 1990, surgical performance and their follow-up medical care of her during and after the surgery. The trial court granted summary judgment on all claims to appellees. This court reversed the summary judgment on appellant's informed-consent and battery claims, holding that an affidavit submitted by appellant's expert witness, Dr. Cecil Parkerson[1], was sufficient to withstand summary judgment on the battery and informed-consent claims. *Parkerson v. Arthur*, No. CA00-1110 (Ark. App. June 27, 2001). This court affirmed the summary judgment on the remainder of appellant's claims. *Id.*

Following remand, on February 14, 2002, appellees filed a "Renewed Motion for Summary Judgment" after learning of the death of Dr. Cecil Parkerson. In the motion, appellees asserted that they were entitled to summary judgment because appellant had not identified another expert to testify; that Dr. Cecil Parkerson's affidavit submitted in opposition to the prior motion for summary judgment was inadmissible to prove a fact at issue at trial; and that appellant could not meet her burden of proving an essential element of her case at trial. Appellant filed a motion seeking to extend the time in which to respond to appellees' motion for summary judgment but did not file a motion to compel discovery.

---

[1] Dr. Cecil Parkerson is appellant's father.

By order filed on March 8, 2002, the trial court extended the time for appellant to respond to the motion for summary judgment until June 1, 2002. In a motion filed on June 3, 2002, appellant requested dismissal of appellees' motion for summary judgment and raised the issue of appellees' failure to answer the discovery. Appellant filed her response to the motion for summary judgment that same day. The trial court granted appellees' motion and entered its order for summary judgment on June 13, 2002.

Appellant, appearing *pro se*,[2] argues two issues on appeal (1) that the trial court erred in acting upon appellees' request for a trial setting made after this court delivered its opinion but prior to the issuance of the mandate to the trial court, and (2) that the trial court erred in granting appellees' renewed motion for summary judgment.

In her first point, appellant argues that the trial court acted without jurisdiction in acting upon appellees' request for a trial setting, which was sent to the trial judge between the time this court delivered its opinion on June 27, 2001, and the time the mandate was filed in the lower court on September 10, 2001. We affirm on this point.

It is axiomatic that this court takes jurisdiction of a matter once the record on appeal is filed with the clerk of the supreme court and retains jurisdiction until the mandate is issued to the lower court. *Barclay v. Farm Credit Servs.*, 340 Ark. 65, 8 S.W.3d 517 (2000). Even though appellees requested the trial setting during the time between the delivery of this court's opinion and the filing of the mandate, the trial court did not actually set the trial date until November 29, 2001, *after* the mandate was filed with the trial court. The action of which appellant complains — the July 18, 2001, letter from the trial court's case coordinator to the trial court clerk — was in the nature of inquiring whether a courtroom would be available on two possible trial dates. Further, appellant did not make a formal objection to the setting. Timothy Brooks, an attorney whom appellant consulted about representing her, informed the court that he was considering the representation and anticipated entering an appearance. His letter requested on appellant's behalf that the

---

[2] The *pro se* appellant receives no special consideration on appeal. *See Gibson v. State*, 298 Ark. 43, 764 S.W.2d 617 (1989).

trial not be set on the March 2002 dates reflected in the court's notice. His letter also made it clear that he was not entering his appearance as attorney for appellant at that time. The trial court reaffirmed the March 7-8, 2002, trial dates in a letter dated January 7, 2002. Thereafter, appellant filed a motion for continuance of the trial on February 12, 2002. On February 21, 2002, the trial court granted the motion for continuance and rescheduled the trial for October 28 through November 1, 2002. While we do not believe that appellant suffered any prejudice or that the trial court acted while it was without jurisdiction, the granting of the continuance removed any possible prejudice appellant may have suffered.

In her second point, which is divided into three subpoints, appellant argues that the trial court erred in granting summary judgment to appellees. We have ceased referring to summary judgment as a "drastic" remedy. We now regard it simply as one of the tools in a trial court's efficiency arsenal; however, we approve the granting of the motion only when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admissions on file is such that the non-moving party is not entitled to a day in court, *i.e.*, when there is no genuine remaining issue of material fact and the moving party is entitled to judgment as a matter of law. *Parkerson v. Lincoln*, 347 Ark. 29, 61 S.W.3d 146 (2001). The burden of proving that there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed favorably to the party resisting the motion. *Id.* On appellate review, we determine if summary judgment was proper based on whether the evidence presented by the movant left a material question of fact unanswered. *Id.*

For her first subpoint under this issue, appellant argues that summary judgment was improper because there was still discovery unanswered by appellees. Whether to grant a continuance to allow for further discovery is a matter within the discretion of the trial court. *Alexander v. Flake*, 322 Ark. 239, 910 S.W.2d 190 (1995); *Jenkins v. International Paper Co.*, 318 Ark. 663, 887 S.W.2d 300 (1994); *Mills v. Crone*, 63 Ark. App. 45, 973 S.W.2d 828 (1998). In order for this court to reverse, appellant must show that the trial court abused its discretion and that the additional discovery would have changed the outcome of the case. *Alexander, supra.*

Appellant has not demonstrated that the trial court abused its discretion in granting the summary judgment prior to the completion of all discovery or that additional discovery would have changed the outcome of the case. *See Pinkston v. Lovell,* 296 Ark. 543, 759 S.W.2d 20 (1988). Appellant filed a motion seeking to extend the time in which to respond to appellees' motion for summary judgment but did not file a motion to compel discovery. In that motion, couched in terms of Ark. R. Civ. P. 56(f), appellant relied upon the fact that she was unrepresented and needed time to consult an attorney. It is only in her affidavit filed in support of her motion for additional time to respond that appellant states that she submitted discovery that remained unanswered. She also attached appellee Gocio's answers to the discovery, which contained objections signed by appellees' counsel. As noted earlier in this opinion, by order filed on March 8, 2002, the trial court extended the time for appellant to respond to the motion for summary judgment until June 1, 2002. In a motion filed on June 3, 2002, appellant requested dismissal of appellees' motion for summary judgment and formally raised the issue of appellees' failure to answer the discovery. Appellant filed her response to the motion for summary judgment that same day. The trial court granted the motion for summary judgment by order filed on June 13, 2002, without addressing appellant's discovery issues.

Appellant has waived this issue by failing to obtain a ruling on the issue. The burden of obtaining a ruling is on the movant, and objections and matters left unresolved in the trial court are waived and may not be relied upon on appeal. *Crawford v. Lee County Sch. Dist.,* 64 Ark. App. 90, 983 S.W.2d 141 (1998).

For her second subpoint, appellant argues that Dr. Cecil Parkerson's affidavit can still be considered as creating a genuine issue of material fact in order to defeat the renewed motion for summary judgment. Appellees, in their renewed motion for summary judgment, alleged that, following Dr. Parkerson's death, appellant failed to designate another medical expert and that, without another expert, there was no expert medical testimony on the issue of informed consent. Appellees asserted that they were therefore entitled to summary judgment.

Appellant's argument is that, because this court determined that Dr. Parkerson's affidavit was sufficient to raise an issue of material fact, the trial court erred in dismissing her suit on

summary judgment. Appellant is arguing, however inarticulately, that the law-of-the-case doctrine precludes the renewed motion for summary judgment. The venerable doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. The doctrine serves to effectuate efficiency and finality in the judicial process. *Frazier v. Fortenberry*, 5 Ark. 200 (1843); *see also* 5 Am. Jur. 2d *Appellate Review* § 605 (1995). The supreme court has said the following with regard to the law-of-the-case doctrine:

> The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998). On the second appeal, the decision of the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented. *Griffin v. First Nat'l Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994).

*Clemmons v. Office of Child Support Enforcement*, 345 Ark. 330, 346, 47 S.W.3d 227, 237 (2001). The rationale for the adherence to a strict application of the rule — the avoidance of the disorder and unpredictability that would follow a departure from the doctrine — has not changed. However, the circumstances have changed with the death of Dr. Parkerson, and under those circumstances, the law-of-the-case doctrine has no application. *See Ragland v. Pittman Garden Ctr.*, 299 Ark. 293, 772 S.W.2d 331 (1989); *Dickson v. Board of Dirs. of Long Prairie Levee Dist.*, 151 Ark. 22, 235 S.W. 45 (1921); *Hartwick v. Hill*, 77 Ark. App. 185, 73 S.W.3d 15 (2002). The supreme court in *Ragland* pointed out that the issues were different on the two appeals and quoted *Dickson*, using this language:

> In our judgment a decision rendered on appeal determines only such questions as are presented for decision and are decided as essential to a just disposition of the pending appeal. The language of a decision is always to be understood by applying it to the facts of the case decided and construing it with reference thereto. *Little Rock Trac. & Elec. Co. v. Kimbro*, 75 Ark. 211, 87 S.W. 121.

299 Ark. at 297, 772 S.W.2d at 333.

██ ██ One way a defending party can obtain summary judgment is by showing that the plaintiff lacks proof on a material element of his claim. *Calcagno v. Shelter Mut. Ins. Co.*, 330 Ark. 802, 957 S.W.2d 700 (1997); *Bushong v. Garman Co.*, 311 Ark. 228, 843 S.W.2d 807 (1992); *Short v. Little Rock Dodge, Inc.*, 297 Ark. 104, 759 S.W.2d 553 (1988). The death of Dr. Parkerson is not insignificant. Before Dr. Parkerson died, his affidavit was not itself admissible, but it established that there was evidence — his opinion to be given in live testimony — that would be admissible at trial. His affidavit no longer meets the requirements of Rule 56(e) because a dead person is not a competent witness. Faced with this situation, appellees renewed their motion, supplemented by proof that the affiant is deceased. *See Clark v. Progressive Ins. Co*, 64 Ark. App. 313, 984 S.W.2d 34 (1998). That required appellant to file a new affidavit or concede that the motion no longer could be opposed by competent testimony at trial. Because appellant failed to oppose appellees' renewed summary judgment with an affidavit from a competent witness complying with Ark. Code. Ann. § 16-114-206 (1987), appellees were entitled to summary judgment on the renewed motion.

██ For her third subpoint, appellant argues that she was not required to present expert medical testimony in order to survive a motion for summary judgment. Appellant relies on *Aronson v. Harriman*, 321 Ark. 359, 901 S.W.2d 832 (1995), for support of her argument. However, *Aronson* actually supports the trial court's ruling. This court cited *Aronson* in its opinion in the first appeal for the proposition that expert medical testimony is *always* required for the jury to determine whether the alleged failure to disclose constituted a breach of the physician's duty to disclose. *Parkerson v. Arthur, supra,* slip opinion at 11.

Under Ark. Code Ann. § 16-114-206(b) (1987), a plaintiff must "always" provide expert medical testimony from which a jury could determine whether the medical-care provider breached his or her duty to disclose information necessary for the informed consent to be given. *Fuller v. Starnes,* 268 Ark. 476, 479, 826 S.W.2d 88, 90 (1980). In *Fuller,* the supreme court upheld a directed verdict in favor of a medical-care provider where plaintiffs failed to produce expert medical evidence establishing a disclosure standard from which a jury could assess the reasonableness of the medical-care provider's conduct. In *Eady v. Lansford,*

351 Ark. 249, 92 S.W.3d 57 (2002), and *Grice v. Atkinson*, 308 Ark. 637, 826 S.W.2d 810 (1992), the supreme court reaffirmed *Fuller* in upholding the decisions of trial courts to direct a verdict in favor of the medical providers where the patient's expert witness merely stated in a conclusory fashion that the information that the doctors had provided the patient in order to obtain consent for surgery was inadequate.

Also, in *Brumley v. Naples*, 320 Ark. 310, 896 S.W.2d 860 (1996), the trial court granted summary judgment in favor of a medical provider when the plaintiff's disclosed expert "could not offer expert testimony, as required by section 16-114-206(b), on the issue of informed consent." The supreme court affirmed, holding that, in the absence of medical testimony on this issue, the plaintiff "had not met her burden of proof and that no material issue of fact existed with respect to informed consent which required presentation of the case to the jury." *Brumley*, 320 Ark. at 318, 896 S.W.2d at 865.

In order to survive summary judgment on her informed consent claim, appellant was required to provide expert testimony. She failed to do so. Appellant's informed-consent claim was correctly dismissed by the trial court on appellees' motion for summary judgment. Once appellant's informed-consent claim was dismissed, there were no longer any genuine issues of material fact to be resolved in appellant's battery claim, because that claim is based on appellant's assertion that she was not adequately informed of the risks or the experimental nature of the surgery using the Orthoblock device and on the assertion in Dr. Cecil Parkerson's affidavit that Dr. Gocio appeared drugged and "out of it" during surgery.

Affirmed.

STROUD, C.J., agrees.

ROAF, J., concurs.

ANDREE LAYTON ROAF, Judge, concurring. I agree that this case must be affirmed, but write separately to express my concern that Gail Parkerson has been made, through the mechanism of summary judgment, to jump through the same hoop twice. The affidavit of her expert witness, now deceased, established that there was a genuine issue of material fact on the question of informed consent, as this court so held in reversing the trial court's first grant of

summary judgment. In *Reeder v. Harper*, 788 N.E.2d 1236 (Ind. 2003), a case factually similar to Parkerson's, the Supreme Court of Indiana reversed a grant of summary judgment, holding that a deceased physician's affidavit, although inadmissible at trial, could properly be considered in opposition to a renewed motion for summary judgment where there was no evidence suggesting that the substance of the affidavit would not be admissible at trial in another form, most likely through the testimony of another expert witness. In Parkerson's case, the appellees are certainly entitled to know who her expert witness will be in a timely fashion prior to trial — that is called "discovery" — and to conduct whatever further discovery they deem appropriate. However, Parkerson has already established that she "has a case" insofar as informed consent is concerned and should not be made to do so twice. This is apparently not the law in Arkansas in regard to renewed or serial summary-judgment motions, as the majority points out, albeit in reference to cases that are factually dissimilar to the one before us. *See, e.g., Calcagno v. Shelter Mut. Ins. Co.,* 330 Ark. 802, 957 S.W.2d 700 (1997); *Bushong v. Garman Co.,* 311 Ark. 228, 843 S.W.2d 807 (1992); *Short v. Little Rock Dodge, Inc.,* 297 Ark. 104, 759 S.W.2d 553 (1988). Closer on point is *Head v. United States Fidelity & Guaranty Co.,* 247 Ark. 928, 448 S.W.2d 941 (1970), in which the supreme court affirmed a grant of summary judgment on a second motion. The supreme court held that the denial of the first motion was not *res judicata;* however, the court noted that the issues in the second motion were not the same. It may well be that the sound reasoning of *Reeder v. Harper, supra,* should be employed when considering an identical summary judgment motion for the second time. However, it is not for this court to make that call, and I agree that we must affirm on this issue.

I also note that Parkerson is proceeding pro se, although she appears from the record before us to have been diligent in seeking counsel after her earlier attorneys withdrew from the case. Indeed, she had obtained an attorney who was prepared to represent her after this court reversed the trial court's first grant of summary judgment. However, the attorney requested a continuance in January 2002 of the March 2002 trial setting, and determined that he could not adequately prepare for trial when the trial court denied the continuance. After his withdrawal, the trial court granted Parkerson's pro se request for continuance by order dated two weeks before the March 2002 trial date. The appellees' "Renewed Motion for Summary Judgment" was filed on Febru-

ary 14, 2002, and summary judgment was granted on June 13, 2002, nearly five months before the new trial date. Parkerson apparently was not able to obtain another lawyer in the three-month period between the trial court's grant of continuance and the time in which she was to respond to the renewed summary-judgment motion. Nevertheless, I agree that a pro se litigant can receive no special consideration on appeal, *see, e.g., Gidron v. State,* 312 Ark. 517, 850 S.W.2d 331 (1993), and that this case must be affirmed.