FIRST NATIONAL BANK,
Guardian of Knoxie M. SMITH *v.* NEWPORT
HOSPITAL AND CLINIC, INC.;
Ramon LOPEZ, M.D.; and John D. ASHLEY, M.D.

83-218                                           663 S.W.2d 742

Supreme Court of Arkansas
Opinion delivered February 6, 1984

*Harkey, Walmsley, Belew & Blankenship,* by: *John Norman Harkey;* and *Skinner & Heuer,* by: *Sam T. Heuer,* for appellant.

*Frierson, Walker, Snellgrove & Laser,* by: *David N. Laser,* for appellee, Newport Hospital & Clinic.

*Barrett, Wheatley, Smith & Deacon,* for appellees, Ramon Lopez and John Ashley.

STEELE HAYS, Justice. This medical malpractice suit was filed by Knoxie Smith[1] against Dr. John Ashley, Dr. Ramon Lopez and the Newport Hospital and Clinic, Inc., alleging a negligent failure to diagnose and treat a fractured femur. Each side served interrogatories and the plaintiff asked the defendants to produce certain medical records. While these matters were pending, the defendants filed motions for summary judgment which the trial court granted. On appeal appellant contends it was error to grant summary judgment where interrogatories and requests for production of documents have not been answered and we sustain the argument.

The complaint alleges that Knoxie Smith fell on her left knee and leg, was hospitalized by the Newport Hospital and Clinic, Inc., under the care of Dr. Ashley, her family physician, and Dr. Lopez, an orthopedist; that surgery was performed to correct a recurrent dislocation of the left

---

[1]First National Bank of Batesville was later appointed Guardian for Mrs. Smith.

kneecap; that appellant was urged to walk on the leg and was discharged after surgery despite complaints of pain and an inability to walk; that she attempted to inform Dr. Ashley of her pain but was never examined and was told to continue physio-therapy; that after consulting another physician appellant was found to have sustained a fracture to the mid neck region of the left femur, requiring surgical removal of the femoral head with prosthetic replacement. Separate and specific acts of negligence by the hospital and physicians were alleged.

Prior to filing the suit, Mrs. Smith's attorneys had referred her to Dr. Dennis Davidson, a Batesville physician, to evaluate her disability and advise counsel on whether a claim of malpractice was justifiable. Dr. Davidson was deposed by the defendants. He expressed the opinion that Dr. Ashley was not at fault because he depended on the orthopedist, Dr. Lopez, but not being skilled in that field of medicine he was unable to say whether Mrs. Smith received the proper orthopedic care.

Defendants moved for summary judgment on the basis of the pleadings, the deposition of Dr. Davidson, and affidavits of Drs. Lopez and Ashley that they had used their best judgment and the same care and skill as of other doctors in similar localities in their diagnosis and treatment. Defendants objected to plaintiff's interrogatories and requests on the grounds that they were entitled to summary judgment which would render plaintiff's discovery moot. The trial court found no genuine issue of fact existed and granted summary judgment.

For reversal, appellant urges that the information and documents requested were crucial to her case and were relevant to the issues to be litigated. We agree. The Arkansas Rules of Civil Procedure, patterned after the federal rules, are to be given a broad and liberal interpretation in the implementation of discovery procedures. *Vower v. Murphy*, 247 Ark. 238, 444 S.W.2d 883 (1969). In *Arkansas State Highway Commission v. Stanley*, 234 Ark. 428, 353 S.W.2d 173 (1965), referring to a discovery statute now incorporated in ARCP Rule 34, we said:

The languge of this statute was taken verbatim from Federal Rule 34. It follows that our legislature, in adopting the wording of the federal rule, also adopted the principle of liberal construction that had been announced in the leading case of *Hickman* v. *Taylor,* 329 U.S. 495, 91 L. ED. 451, 67 S. Ct. 385: "We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. *Mutual Knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."* (our italics)

Here, there is no suggestion of a lack of diligence by the plaintiff in discovery efforts, as was found in *Mixon* v. *Chrysler Corporation, et al,* 281 Ark. 202, 663 S.W.2d 713 (1984). Nor is there any reason to challenge the relevancy of the information sought by the interrogatories and requests, they were clearly pertinent to the issues of the case.

The essence of the appellees' arguments and authorities is that in a medical malpractice case a plaintiff has the burden of proving, ordinarily by expert medical testimony, that the plaintiff's injuries were caused by the defendant's failure to exercise the degree of skill and learning possessed by other physicians engaged in the same kind of practice in similar localities, which the plaintiff has failed to produce. That may be so, but before being required to fully demonstrate that evidence in response to a motion for summary judgment a plaintiff is entitled to have the benefit of adequate discovery from the opposing parties as the nature of the case requires. Those benefits were withheld in this case and the trial court should not have granted summary judgment until appellant was able to complete discovery and develop, if obtainable, the necessary proof. In *Palmer* v. *Chamberlin, et al,* 191 F.2d 532 (5th Cir. 1951), the Court of Appeals cautioned against the untimely granting of summary judgment under Rule 56:

However, before rendering judgment the Court must be satisfied not only that there is no issue as to any material fact, but also that the moving party is entitled to a judgment as a matter of law. Where, as in this case, the decision of a question of law by the Court depends upon an inquiry into the surrounding facts and circumstances, the Court should refuse to grant a motion for a summary judgmet until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law.

See also *Dumansky* v. *United States,* 486 F. Supp. 1078 (D.N.J. 1980); *Kinee* v. *Abraham Lincoln Federal Savings and Loan Association,* 365 F. Supp. 975 (E.D. Pa. 1973), and cases cited in 6 Moore's Federal Practice, 2d ed., p. 56-391, § 56.15.

Reversed and remanded.