William V. ALEXANDER, Jr. *v.* John FLAKE

95-5                                         910 S.W.2d 190

Supreme Court of Arkansas
Opinion delivered October 30, 1995

240

*Randel Miller,* for appellant.

*Wright, Lindsey & Jennings,* by: *Isaac A. Scott, Jr., David M. Powell,* and *Stephen R. Lancaster,* for appellee.

ROBERT H. DUDLEY, Justice. Plaintiff William V. Alexander, Jr. filed this suit on June 11, 1993, alleging that defendant John Flake committed fraud, breach of fiduciary duty, and fraudulent concealment in the development of a real estate project in Boulder, Colorado. Defendant Flake later moved for summary judgment. The primary issue was whether the three-year statute of limitations had run by the time suit was filed. The trial court ruled that the suit was barred. Plaintiff appeals. We affirm the ruling of the trial court.

Summary judgment is a remedy that should only be granted when there are no genuine issues of material fact and when the case can be decided as a matter of law. *Hampton* v. *Taylor,* 318 Ark. 771, 776, 887 S.W.2d 535, 538 (1994). Our review is limited to examining the evidentiary items presented below and determining whether the trial court correctly ruled that those items left no material facts disputed. *Id.* at 777, 887 S.W.2d at 539. The facts must be viewed in the light most favorable to the party against whom the motion was filed, and all doubts and inferences are resolved against the moving party. *Id.*

A defense of limitation is an affirmative defense. When it is clear on the face of the complaint that the action is barred, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was tolled. *First Pyramid Life Ins. Co.* v. *Stoltz,* 311 Ark. 313, 843 S.W.2d 842, *cert. denied,* 114 S.Ct. 290 (1992).

Although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law. *Miles* v. *A. O. Smith Harvestore Prods., Inc.,* 992 F.2d 813, 817 (8th Cir. 1993). The statute of limitations for fraud and breach of fiduciary duty actions is three years. Ark. Code Ann. § 16-56-105 (1987); *Hampton* v. *Taylor,* 318 Ark. 771, 887 S.W.2d 535 (1994); *Smith* v. *Elder,* 312 Ark. 384, 849 S.W.2d 513 (1993). Plaintiff Alexander filed this lawsuit on June 11, 1993. Conse-

quently, for the complaint to have been timely filed, plaintiff must neither have known, nor been able to discover through reasonable diligence, the alleged fraud before June 11, 1990.

## I. Statute of Limitations

The parties filed extensive affidavits, exhibits, depositions, and briefs in the trial court. A review of those documents reveals the following facts.

## A. Undisputed Facts

Plaintiff Alexander is an attorney licensed to practice before the Bars of Arkansas, Tennessee, and the District of Columbia. After graduating from Vanderbilt Law School, he served as a law clerk for a federal district judge. He then practiced law for seven years. He was a member of Congress for twenty-four years. He has the capacity to understand legal documents.

In November 1984, plaintiff and five other men, including defendant Flake, signed a general partnership agreement to form Boulder Properties I. The purpose of the partnership was to develop a condominium complex in Boulder, Colorado. Under the terms of the partnership agreement, plaintiff Alexander had a profit or loss percentage of 16.667%. The partnership financed the project through Twin City Bank of North Little Rock by executing a promissory note in the amount of $5,150,000. The partners executed this "first" guaranty agreement under which the partners were jointly and severally liable for full payment of the note. Thus, in 1984, plaintiff Alexander, along with each of the others, was jointly and severally liable for the five-million dollar debt.

The real estate market in Boulder deteriorated, and the condominium units did not sell as the partners had anticipated. In April 1987, the partnership executed another guaranty agreement, the "continuing" guaranty agreement, under which each of the partners reduced his liability to 125% of his pro rata share of the partnership. Under the continuing guaranty, plaintiff and defendant each guaranteed 20.83% of the amount of the note. At the same time, the principal amount of the note was reduced to $3,500,000. Thus, under the "continuing" guaranty, the amount of plaintiff's joint and several liability was reduced.

David McCreery, the managing general partner, sent memoranda to each partner, before and after the execution of the continuing guaranty, outlining the financial problems of the project, initially expressing belief that the project ultimately would be successful; informing the partners of their share of marketing expenses due; informing the partners that they must seek financing for their personal amount of the debt; informing the partners that it would be necessary for them to make monthly payments on the current interest due to the Twin City Bank; discussing the continuing guaranty; discussing the shortfall of the property; and discussing the possibility of the partners providing individual letters of credit for their pro rata share of the shortfall.

As early as January 1987, the memoranda expressed concern over the success of the project. In March 1987, one of McCreery's memoranda stated, "I can't tell you how I regret that this development did not turn out the way we all had intended for it to, but markets change and we got involved in a market that deteriorated about the time that we started construction." In September 1987, McCreery's memorandum to the partners stated that he calculated the shortfall on the loan to be $600,000, but that Twin City Bank was requesting a letter of credit in the amount of $1,150,000. The memorandum stated that each partner's decision to provide a letter of credit or other collateral for his pro rata share was his personal decision. This memorandum also referred to the fact that the loan was on the bank examiners' list of criticized loans.

Plaintiff Alexander wrote a letter to Twin City Bank in November 1987, in which he proposed collateral in Mississippi County for his 16.6% interest in the Boulder property. This was more than four years before suit was commenced. Plaintiff also made numerous payments to the partnership for monthly interest assessments in accordance with the memoranda. Plaintiff obtained a loan of $259,250 from Twin City Bank in May 1988, to cover his part of costs associated with Boulder Properties.

In 1990, the development sold for a loss. Plaintiff failed to satisfy his obligations to Twin City Bank, and the bank filed a foreclosure suit against plaintiff in Mississippi County, the venue of the collateral.

## B. Plaintiff's Allegations of Fact

Plaintiff's affidavits and other evidentiary matters, which we must accept as true in reviewing the grant of summary judgment, reflect the following. In the early 1980's, defendant Flake and Congressman Alexander became friends through their mutual interest in politics. Defendant would call plaintiff frequently to discuss state political issues as well as matters pending in Congress. Plaintiff believed defendant was a concerned citizen with a genuine interest in public policy.

In their conversations, plaintiff told defendant that he had very limited funds for investment and had little time to spend on looking after his investments. Defendant stated that plaintiff could join in some of his investments, and together they made several investments. Defendant brought plaintiff into five different business ventures and told him of the transactions only after the fact. The first of these investments included use of a non-recourse promissory note. Defendant knew that plaintiff did not know the details of the ventures and did not have the time or inclination to learn about them. Defendant always reported to plaintiff that the various ventures were going well.

In 1984, defendant entered plaintiff in the Boulder I partnership. Defendant knew that plaintiff would not review the various documents before signing them and that it was defendant's responsibility to review the documents. Once defendant sent the documents to plaintiff, plaintiff considered the documents to have defendant's stamp of approval, and he routinely signed and returned them to defendant without reading them. At times, defendant sent only the signature page of documents. In numerous phone calls extending through 1991, defendant continued to discuss the Boulder project in glowing terms.

In 1987, defendant told plaintiff that he would send him a document for his signature. Defendant stated that the document was merely a formality that the bank needed. The document was the continuing guaranty which reduced both plaintiff and defendant's liability to 20.83% of the loan. Plaintiff contends that had he realized that the continuing guaranty reduced defendant Flake's liability he would not have signed it.

Plaintiff learned from the memoranda that the project needed

more money, but he still believed, because of the representations of defendant, that he had no exposure or liability to the bank. Defendant later requested that plaintiff sign a note, and he did so only after defendant assured him that the note was just something needed for the bank's records. At that point, plaintiff continued to believe the project was profitable and that he had no personal liability.

In support of his contention that a fiduciary relationship existed, plaintiff averred that, in 1984, following the closing of a transaction on property unrelated to the partnership, defendant purchased a certificate of deposit as plaintiff's trustee. When the certificate of deposit matured, the funds were sent to plaintiff. Further, in 1990, defendant contacted a certified public accountant to discuss the manner of handling plaintiff's finances.

In February 1990, plaintiff became aware of the gravity of the investment in the Boulder I partnership. In the fall of 1991, plaintiff discovered that defendant had interests adverse to his, and that defendant took steps to reduce his own exposure at the time he caused plaintiff to sign the continuing guaranty. In February 1993, after reviewing documents with his attorney, plaintiff discovered that defendant had breached his duty and obligation to him.

### C. Facts Applied to Law

Plaintiff contends that the trial court erred in ruling that this action is barred by the statute of limitations because an issue of material fact exists about whether defendant concealed his fraud and breach of fiduciary duty.

Plaintiff signed the general partnership agreement in November 1984, and signed the continuing guaranty, the document which is the basis for this suit, on April 27, 1987. It is undisputed that plaintiff received numerous memoranda reporting the financial condition of the partnership both before and after signing the continuing guaranty. Plaintiff made payments to the partnership and obtained financing to cover costs associated with the partnership throughout 1987, 1988, and 1989. Plaintiff admits that he signed the partnership agreement and continuing guaranty agreement, but averred that he did not read them. He also averred that he did not read the numerous memoranda which would have

informed him of the financial condition of the partnership. Plaintiff's failure to read the partnership agreement, the continuing guaranty, and the memoranda show a lack of reasonable diligence.

■  In *First Pyramid Life Insurance Co.* v. *Stoltz,* we wrote:

> Even if there was evidence of fraud on the part of First Pyramid, and there is none, the statute of limitations would still have run on this claim. "Fraud does suspend the running of the statute of limitations, and the suspension remained in effect until the party having the cause of the action discovers the fraud *or should have discovered it by the exercise of reasonable diligence.*"

311 Ark. at 318, 843 S.W.2d at 845 (emphasis in the original) (citations omitted). The opinion quotes the "classic language on this point," as follows:

> No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it.

*Id.* at 319, 843 S.W.2d at 845 (citations omitted).

In *Wilson* v. *General Electric Capital Auto Lease, Inc.,* 311 Ark. 84, 841 S.W.2d 619 (1992), the plaintiffs leased a car for five years and alleged that they were told they could return the car in three years and owe nothing further on the lease agreement. The plaintiffs also alleged they were told they would not have to purchase excess mileage coverage since they would be returning the car early. After plaintiffs used the car for three years and the car reached the mileage limitation, they attempted to return it. The defendants would not accept return of the car. The plaintiffs learned that the contract, which they had not previously read, contained a clause that provided a formula for determining an early termination charge. The plaintiffs filed a com-

plaint alleging intentional misrepresentation and usury three years and four months after signing the contract. The trial court granted summary judgment for the defendant based, in part, on the ruling that the claim was time-barred. The plaintiffs asserted that the statute of limitations was tolled by fraudulent concealment of the misrepresentation at the time they signed the lease agreement. We affirmed the ruling of the trial court, stating that the statute of limitations was suspended only until the fraud, if any, was or should have been discovered with the exercise of reasonable diligence. In so holding, we wrote:

> In sum, the Wilsons did not fulfill their duty to exercise reasonable diligence in examining the contract they executed to uncover what they alleged was a fraudulent misrepresentation by the leasing manager, so they cannot now complain that the statute of limitations should have been tolled. To the contrary, the evidence shows that they knew or should have known of the contract's actual provisions, so there was no genuine issue of material fact precluding summary judgment.

*Id.* at 89, 841 S.W.2d at 621.

Similarly, in the case at bar, appellant did not fulfill his duty to exercise reasonable diligence in examining the agreements or in reading the memoranda provided to him. Consequently, he cannot avail himself of the benefit of tolling based on fraudulent concealment.

Plaintiff relies on the case of *Hickson* v. *Saig*, 309 Ark. 231, 828 S.W.2d 840 (1992), in which the plaintiff signed a lease for retail space after being assured by the defendant leasing agent that a Wal-Mart store would remain in the shopping center. Shortly after the lease was signed, an article appeared in the local newspaper stating that Wal-Mart was relocating elsewhere. The plaintiff was not aware of the article. The plaintiff later heard a rumor that Wal-Mart was relocating and asked the defendant listing agent if it were true. The agent told her that Wal-Mart would remain in the center. At a meeting of the shopping center merchants, the defendant listing agent told the merchants that Wal-Mart was remaining in the center. A month later Wal-Mart relocated. Plaintiff filed suit. The trial court granted the defendants' motion for summary judgment, finding that the statute of limi-

tations was not tolled by fraudulent concealment because, following the publication of the newspaper article, the plaintiff knew or with reasonable diligence could have discovered that Wal-Mart was relocating. We reversed. The proof showed that plaintiff relied on the statements by the listing agent and did not see the article. Therefore, an issue of material fact existed as to whether the article should have put the plaintiff on notice and required her to investigate to determine whether Wal-Mart was moving.

That case is clearly distinguished from the case at bar because, in that case, the defendant did not provide plaintiff with documents that contained the allegedly concealed information. The plaintiff might have read the newspaper article, and it might have put plaintiff on notice; that was a material issue of fact. Here, plaintiff signed the partnership agreement that made him a general partner and made him subject to liability. He signed the first guaranty and the continuing guaranty. He is bound to know the content of the documents he signed. *Lee* v. *Lee*, 35 Ark. App. 192, 816 S.W.2d 625 (1991); *see also Stone* v. *Prescott Special Sch. Dist.*, 119 Ark. 553 (1915). Additionally, the memoranda outlining the condition of the project, advising the partners that they needed to obtain financing and informing them of their share of expenses due, were sent directly to plaintiff. The evidence conclusively proved that, even if plaintiff did not know of the fraud prior to June 11, 1990, he could have discovered it by exercising reasonable diligence.

The trial court additionally ruled that summary judgment was granted because plaintiff failed to show one of the elements of fraud and failed to show a breach of fiduciary duty. Plaintiff assigns those rulings as error, but we do not reach the assignments since we affirm the trial court's ruling on the basis of the running of the statute of limitations.

## II. Summary Judgment
### Prior to Completion of Discovery

In his final argument plaintiff contends that the trial court erred in granting summary judgment before he was able to submit some records from the Federal Deposit Insurance Corporation. At the hearing on the motion for summary judgment, plaintiff asked the trial court to refrain from ruling on the motion until

he obtained a protective order and then could submit some FDIC records and an affidavit by an expert witness. He stated that the affidavit was prepared and he could file it with the court if the court entered the protective order on that day. The trial court entered the protective order on the day of the hearing as requested. The summary judgment was granted upon "consideration of the pleadings, affidavits, and other materials both in support of and in opposition to the Motion for Summary Judgment (including without limitation certain materials submitted by the plaintiff after the hearing)." The FDIC records were submitted after the hearing; therefore, plaintiff's argument most likely is lacking for a factual basis. However, even if the trial court should not have considered the FDIC records, we would not reverse.

██ Whether to grant a continuance to allow for further discovery is a matter within the discretion of the trial court. ARCP Rule 56(f); *Jenkins* v. *Int'l Paper Co.*, 318 Ark. 663, 887 S.W.2d 300 (1994). In order for this court to reverse the trial court's denial of the continuance, the appellant must show that the trial court abused its discretion and that the additional discovery would have changed the outcome of the case. *Id.* Plaintiff has not demonstrated that the trial court abused its discretion in granting the summary judgment prior to the completion of all discovery or that the additional discovery would have changed the outcome of the case.

██ Plaintiff relies on *First National Bank* v. *Newport Hospital and Clinic, Inc.*, 281 Ark. 332, 663 S.W.2d 742 (1984). That case was a medical malpractice case, and the plaintiff had the burden of proving, by expert testimony, that her injuries were caused by the failure of the defendant to exercise the degree of skill and learning possessed by other physicians engaged in the same kind of practice in similar localities. The trial court granted the defendants' motion for summary judgment based on the lack of expert testimony to support the plaintiff's claims prior to the defendant producing medical records which the plaintiff had requested in discovery. We reversed and stated that there was no suggestion of lack of diligence on the part of the plaintiff or any reason to challenge the relevancy of the discovery sought. We concluded:

> Where, as in this case, the decision of a question of law by the Court depends upon an inquiry into the sur-

rounding facts and circumstances, the Court should refuse to grant a motion for a summary judgment until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law.

*Id.* at 336, 663 S.W.2d at 744 (quoting *Palmer* v. *Chamberlin*, 191 F.2d 532 (5th Cir. 1951)). Unlike *First National Bank* v. *Newport Hospital and Clinic*, the facts in the case at bar were sufficiently developed for the trial court to determine whether summary judgment was appropriate.

■ Plaintiff asserts that the FDIC records, the affidavits, and the depositions were relevant to show that defendant had a motive to shift liability from himself to plaintiff in the continuing guaranty. While such evidence may have supported plaintiff's theory of the case had it gone to trial, it does not change the fact that plaintiff did not show damage or justifiable reliance, two elements necessary to a cause of action based on fraud. Motive is not an element of fraud. *See Hampton* v. *Taylor*, 318 Ark. 771, 887 S.W.2d 535 (1994). Nor does it establish a fiduciary relationship or breach of that relationship. Thus, plaintiff has not demonstrated that postponing the ruling for further discovery would have enabled him to rebut the motion for summary judgment. In addition, plaintiff has not shown that he was diligent in obtaining the additional discovery. *See Jenkins* v. *Int'l Paper Co.*, 318 Ark. 663, 887 S.W.2d 300 (1994).

Affirmed.