

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV–15–873

| | |
|---|---|
| | **Opinion Delivered:** AUGUST 24, 2016 |
| DON PAUL BALES et al. APPELLANTS | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. CV-14-23(VI)] |
| V. | |
| THE CITY OF FORT SMITH, ARKANSAS, et al. APPELLEES | HONORABLE JAMES O. COX, JUDGE AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**LARRY D. VAUGHT, Judge**

Appellants Don Paul Bales (Bales), Rick Entmeier (Entmeier), and Wendall Sampson, Jr., (Sampson) sued appellees the City of Fort Smith, Arkansas, and Kevin D. Lindsey, Chief of the Fort Smith Police Department (FSPD), in the Sebastian County Circuit Court for violations of the Arkansas Whistle-Blower Act (AWBA). Appellees petitioned the circuit court for summary judgment, and the circuit court granted the motion, dismissing the case in its entirety. Appellants bring this appeal challenging the circuit court's order for summary judgment to appellees. After considering the merits, we affirm in part and reverse and remand in part.

## I. *Background*

Because this case is entirely based upon the AWBA, we begin with a brief overview of the Act. Ark. Code Ann. §§ 21-1-601 *et seq.* (Repl. & Supp. 2015) Pursuant to the AWBA, "[a] public employer shall not take adverse action against a public employee because

the public employee . . . communicates in good faith to an appropriate authority (A) the existence of waste of public funds, property, or manpower . . . or (B) a violation or suspected violation of a law, rule, or regulation adopted under the law of this state or a political subdivision of this state." Ark. Code Ann. § 21-1-603(a)(1).

To prevail in an action under the AWBA, "the public employee shall establish, by a preponderance of the evidence, that the employee has suffered an adverse action because the employee . . . engaged . . . in an activity protected under this subchapter." Ark. Code Ann. § 21-1-604(c). The mere fact that an employee meets the definition of a whistle-blower does not mean that he or she is protected from all subsequent discipline. A public employer has an affirmative defense to a whistle-blower lawsuit if the adverse action taken against the public employee was due to employee misconduct, poor job performance, or a reduction in workforce unrelated to a whistle-blowing communication. Ark. Code Ann. § 21-1-604(e)(1). With these standards in mind, we turn our attention to the alleged whistle-blowing communications engaged in by appellants as well as the disciplinary measures that followed.

Although not a party, Addisen Entmeier (Addisen) was a catalyst for this litigation.[1] Addisen was a probationary police officer with the FSPD. During his probationary period, Addisen developed the opinion that employees were requesting pay for overtime work completed during their already paid lunch hours. Sampson and Addisen reported this

---

[1] Addisen's father is appellant Rick Entmeier.

practice to Sergeant Dawn Sprayberry.[2] Emily Haney, an employee engaged in this practice, is married to Captain Alan Haney who was Addisen's supervisor.

It is alleged that several members of the FSPD sought to have Addisen terminated in retaliation for his statements about Emily Haney and the others who engaged in this practice. Addisen took his concerns regarding this supposed retaliation to Bales, and Bales accompanied Addisen to file a grievance on the matter with Chief Lindsey. Addisen was ultimately terminated during his probationary period, but his termination is not a subject of this appeal.

Following Addisen's termination, Bales and Entmeier wrote messages of support for Addisen on their personal Facebook pages. Shortly thereafter, Chief Lindsey told them that he took no offense to their Facebook posts. It was during this exchange that Bales and Entmeier told Chief Lindsey that they believed he had been misled into terminating Addisen's employment. As a result of this conversation, Chief Lindsey instituted an internal investigation into Addisen's termination. Subsequent to that, Chief Lindsey ordered Bales and Entmeier to stop posting these types of messages on Facebook.

First, we consider the alleged whistle-blowing communications made by Bales, Entmeier, and Sampson. Bales and Entmeier allege that they are whistle-blowers within the meaning of the AWBA because they were retaliated against for reporting violations of FSPD rules relating to the termination of Addisen. Sampson contends that his report of improper overtime pay and his report of harassment and bullying by Sgt. Dawn Sprayberry qualify

---

[2] Later, Sampson reported that he was subjected to harassment and bullying by Sgt. Sprayberry.

him as a whistle-blower under the AWBA. With this in mind, we direct our attention to the alleged retaliatory acts against appellants.

Almost immediately following the termination of Addisen, appellants became the subject of internal investigations and grievances at the FSPD. Prior to Addisen's termination, Bales and Entmeier had never been disciplined during their employment with the FSPD, and Sampson had not been disciplined in more than fifteen years.

Bales and Entmeier's support for Addisen following his termination ultimately became the subject of an internal FSPD inquiry. Bales received a five-day suspension without pay for conduct unbecoming an officer or neglect of duty and for public criticism that impairs the operation of the department, and Entmeier received a one-day suspension without pay for conduct unbecoming an officer.

Another alleged retaliatory act involves Angela McCabe, a 911 dispatcher in the FSPD. Bales and Sampson gave McCabe a counseling session to address a personnel issue. This session was at the behest of Bales and Sampson's supervisors. McCabe was ultimately assigned to work a different shift. Afterwards, McCabe filed a grievance against Bales and Sampson alleging age discrimination and sexual harassment. An investigation into the grievance was initiated. As a result, Sampson was formally reprimanded and Bales was suspended without pay for one day.

A FSPD morale-building exercise also resulted in disciplinary measures for Bales. Bales and Sampson organized a morale-building exercise that required some employees to be out of the office. The employees who staffed the office during the exercise received overtime pay. As a result, the FSPD conducted an investigation regarding a potential misuse

of police funds, and Bales received a disciplinary memo to his file.

In January 2014, appellants filed this lawsuit against appellees alleging violations of the AWBA, and in March 2015, appellees filed a motion for summary judgment. Attached to appellees' motion was the testimony of appellants, as well as sixteen additional affidavits. The crux of appellees' motion was that any sanctions imposed against appellants were the result of poor job performance and were not retaliatory. Appellees asserted that there were no facts in evidence to support the existence of a causal connection between appellants' whistle-blowing communications and the sanctions imposed on them thereafter. Appellants responded to the motion for summary judgment and offered their own responsive affidavits. The circuit court ultimately found that appellees were entitled to summary judgment on appellants' claims.

In this appeal, appellants argue that the circuit court erred by granting summary judgment to appellees. They contend that 1) appellees did not establish that summary judgment was warranted, (2) the circuit court erred in granting summary judgment because causation is a question of fact for the jury, (3) the circuit court ignored their evidence, and (4) appellees' failure to fully answer discovery precluded summary judgment.

## II.    *Entitlement to Summary Judgment*

A motion for summary judgment should be granted only when, in light of the pleadings and other documents before the circuit court, there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Ark. R. Civ. P. 56(c). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *New Maumelle Harbor v. Rochelle*, 338 Ark. 43, 991 S.W.2d 552 (1999). When

reviewing whether a motion for summary judgment should have been granted, the appellate court determines whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Bomar v. Moser*, 369 Ark. 123, 127, 251 S.W.3d 234, 239 (2007). Once the moving party has established prima facie entitlement to summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Meadors v. Still*, 344 Ark. 307, 40 S.W.3d 294 (2001). This court also evaluates whether reasonable minds could differ in their interpretation of the facts. *Thomas v. Stewart*, 347 Ark. 33, 60 S.W.3d 415 (2001).

We begin our analysis by considering three of appellants' points on appeal that arise with respect to all of their AWBA claims and are best discussed simultaneously. These issues are whether summary judgment was improper because (1) appellees failed to establish prima facie entitlement to summary judgment, (2) causation is always a question of fact, and (3) the circuit court ignored their evidence.

For each appellant's claim, appellees presented evidence that any disciplinary action taken was for reasons unrelated to protected whistle-blowing communication. Appellants claim that summary judgment cannot be granted on these grounds because that is an affirmative defense. Ark. Code Ann. § 21-1-604(e). They argue that affirmative defenses must always be raised at trial and determined by the trier of fact. We disagree. Once the moving party presents evidence of the affirmative defense in its motion for summary

judgment, it is the responsibility of the nonmoving party to meet proof with proof. *Bomar*, *supra*; *see also Barrows v. City of Fort Smith*, 2010 Ark. 73, 360 S.W.3d 117.

Additionally, appellants assert that the circuit court improperly granted summary judgment because causation is always a question of fact. In order to establish proximate cause, there must be evidence beyond mere allegations and conclusions. *Wirth v. Reynolds Metal Co.*, 58 Ark. App. 161, 947 S.W.2d 401 (1997). While causation is usually a question for a jury to decide, it becomes a question of law only if reasonable minds could not differ. *Mergen*, *supra*. Whether this appeal presents a situation in which proximate cause is an issue of law will be discussed in greater detail. However, our case law contemplates instances in which proximate cause is not a question for the fact-finder.

Finally, appellants argue in favor of reversal based on the broad premise that the circuit court ignored their evidence. To support this argument, they direct our attention to statements the circuit court made from the bench when granting summary judgment. We need not evaluate the circuit court's statements from the bench in order to address this issue. Our standard for considering an order for summary judgment is well settled. In reviewing an order granting summary judgment, appellate courts are charged with determining first whether the moving party established prima facie entitlement to summary judgment and then whether the nonmoving party met proof with proof. *Bomar*, *supra*. This is the standard by which we will consider whether summary judgment was appropriate on each of appellants' AWBA claims, and the resolution of this question will necessarily dispose of the issue of whether the circuit court properly considered all evidence before it.

With these preliminary issues resolved, we turn our attention to the individual claims of each appellant. To prevail on a claim, the public employee must report a violation or waste to an appropriate authority such as a "member, officer, agent, investigator, auditor, representative or supervisory employee of the body, agency or organization." Ark. Code Ann. § 21-1-602(2)(A)(i). The reporting of the violation or waste must then result in an "adverse action" to the employee, which means to "discharge, threaten, or otherwise discriminate or retaliate against a public employee in any matter that affects the employee's employment, including compensation, job location, rights, immunities, promotions, or privileges." Ark. Code Ann. § 21-1-602(1).

*A.* The Claim of Don Paul Bales

We begin by acknowledging that Bales meets the definition of a whistle-blower under the AWBA. Bales was a public employee, and the FSPD is a public employer. It is undisputed that Bales's report to Chief Lindsey regarding Addisen's termination qualifies as a whistle-blowing communication. Accordingly, we are left to determine whether there is evidence that Bales suffered an adverse action because of his report.

Our law is clear that the party moving for summary judgment must first establish a prima facie entitlement to summary judgment. *Ford Motor Credit Co. v. Twin City Bank*, 320 Ark. 231, 895 S.W.2d 545 (1995). Once a prima facie entitlement has been established, it is only then that the party opposing the motion must demonstrate the existence of a material fact. *Id.*

Appellees have established prima facie entitlement to summary judgment. They offered affidavits indicating that all investigations into Bales were the result of employee

misconduct or poor job performance and not related to his whistle-blowing communication. Accordingly, we direct our attention to whether there is evidence to establish a causal connection between Bales's whistle-blowing and the subsequent adverse actions he faced.

Almost immediately after Bales's whistle-blowing communication, he became the subject of internal investigations. Bales presents evidence that he was punished in response to his comments and behavior regarding Addisen's termination. He also faced adverse actions at the FSPD arising out of his disciplinary measures against Angela McCabe and his organization of the morale-building exercise.

Bales highlights several pieces of evidence to support the proposition that there was a causal connection between his whistle-blowing communication and the subsequent adverse actions he faced. Bales emphasizes Chief Lindsey's own testimony wherein he admitted punishing Bales in spite of the fact that he thought Bales had made a good-faith report about Addisen's termination. Bales also indicates that another FSPD employee received different treatment than he did after making similar good-faith allegations that ultimately turned out to be unsubstantiated. Bales presented evidence that, in one investigation against him, Chief Lindsey amended the investigation to include statements made by Bales, and Chief Lindsey's amendment was made before Bales actually made his statements. This could lead a fact-finder to infer a malicious intent by Chief Lindsey. Finally, Chief Lindsey held himself out to be a neutral arbiter in the investigations against Bales, but, during the investigation against Bales and Entmeier, he reviewed and amended the

investigatory questions to be asked. This conduct by Chief Lindsey could also lead to the inference that Lindsey was not the neutral arbiter he claimed to be.

When evaluating evidence in a motion for summary judgment, we must resolve all doubts and inferences in the nonmoving party's favor. *Meadors*, *supra*. With this standard in mind, it is clear that reasonable minds could determine that there is evidence connecting Bales's whistle-blowing communication to the adverse actions he ultimately incurred. Accordingly, we hold that summary judgment on Bales's whistle-blower claim was improper, and we reverse and remand this claim for further proceedings.

*B.* The Claim of Rick Entmeier

Like Bales, Entmeier meets the definition of a whistle-blower under the AWBA. Entmeier is a public employee, and the FSPD is a public employer. Entmeier's whistle-blowing communication was the same as Bales's in that he told Chief Lindsey that he believed Addisen had been improperly terminated. Entmeier received a one-day suspension for his comments and behavior regarding Addisen's termination.

When considering whether appellees established a prima facie entitlement to summary judgment, we acknowledge that appellees again offered reasons for Entmeier's disciplinary measures unrelated to his whistle-blowing communication. Accordingly, we conclude that appellees established a prima facie entitlement to summary judgment, and our question becomes whether Entmeier met proof with proof to withstand summary judgment.

As with Bales, we determine that reasonable minds could conclude that the adverse actions Entmeier suffered were a result of his whistle-blowing communication. Evidence shows that Chief Lindsey may not have been a neutral arbiter during the investigatory

proceedings against Entmeier. Specifically, Chief Lindsey took an active role in the investigatory process by reviewing and amending the investigatory questions to be asked of Entmeier and Bales. We reverse and remand Entmeier's claim for further proceedings.

## *C.* The Claim of Wendall Sampson, Jr.

Finally, we direct our attention to Sampson's whistle-blower claim. Like Bales and Entmeier, Sampson is clearly a public employee, and the FSPD is a public employer under the Act. However, in this instance, we are required to evaluate whether Sampson is a whistle-blower within the meaning of the AWBA.

Sampson's alleged whistle-blowing communications are (1) reporting what he believed to be the unauthorized use of overtime pay and (2) reporting bias, bullying, and harassment by Sergeant Dawn Sprayberry. According to the AWBA, a whistle-blower is one who either reports (1) a waste of public funds or (2) a violation of the law. A whistle-blowing communication is defined as either a communication regarding the existence of waste of public funds, property, or manpower or a violation or suspected violation of a law, rule, or regulation adopted under the law of this state. Ark. Code Ann. § 21-1-603(a)(1).

Appellees contend that Sampson's communications regarding Sgt. Sprayberry's alleged bullying and harassment as alleged here are not contemplated by the AWBA. We agree. Bullying and harassment do not amount to either a waste of public funds or a violation of the law.

Sampson also alleges that his communications regarding improper overtime usage qualify him as a whistle-blower under the AWBA. Appellees dispute this, arguing that overtime pay was always available in the department and that the alleged improper overtime

payment reported by Sampson was to fund positions that had to be staffed. Simply put, they assert that, because no money was lost by the FSPD, there was no waste. We hold that the appellees' argument fails. The AWBA requires only that Sampson make a good-faith report. Ark. Code Ann. § 21-1-603(a)(1). The evidence, viewed in the light most favorable to Sampson, establishes that his report on improper overtime usage was made in good faith. Accordingly, we conclude that whether Sampson is a whistle-blower within the meaning of the AWBA is a question of fact.

Having made that conclusion, we turn our attention to whether Sampson presented evidence that he suffered an adverse action because of his whistle-blowing communication. The adverse action suffered by Sampson was a formal reprimand for disciplining Angela McCabe without first documenting her work deficiencies. As with the claims of Bales and Entmeier, appellees introduced evidence that the disciplinary measures Sampson received were the result of employee misconduct or poor work performance and were not retaliatory, and we hold that appellees established a prima facie entitlement to summary judgment.

We now consider whether there is evidence to establish a causal connection between Sampson's whistle-blowing communication and the adverse action he suffered. Sampson failed to offer any evidence linking his formal reprimand to his whistle-blowing communication, and without any evidence of causation, Sampson failed to meet proof with proof. Accordingly, his whistle-blower claim necessarily fails. We hold that the circuit court properly granted summary judgment on Sampson's AWBA claim and affirm.

### III. *Whether Discovery Issues Precluded Summary Judgment*

As their final issue on appeal, appellants contend that the circuit court was precluded from granting summary judgment because appellees failed to fully answer discovery. A circuit court has wide discretion in matters pertaining to discovery, and Arkansas appellate courts will not reverse a circuit court's decision absent an abuse of discretion. *Lancaster v. Red Robin Int'l, Inc.*, 2011 Ark. App. 706, 386 S.W.3d 662.

"Before being required to demonstrate [the required] evidence in response to a motion for summary judgment, a plaintiff is entitled to have the benefit of adequate discovery from the opposing parties as the nature of the case requires." *First Nat'l Bank v. Newport Hosp. & Clinic, Inc.*, 281 Ark. 332, 335, 663 S.W.2d 742, 743–44 (1984). The issue of discovery was fiercely contested before the circuit court, and the evidence indicates that the circuit court gave appellants great latitude in conducting discovery including, but not limited to, allowing appellants to access all available records at the FSPD. With regard to Sampson, we hold that the circuit court did not abuse its discretion by refusing to allow more discovery. The issue of discovery as it pertains to Bales and Entmeier is moot. With the claims of Bales and Entmeier returning to the circuit court for further proceedings, the circuit court is free to allow discovery on their claims as it deems appropriate.

Affirmed in part; reversed and remanded in part.

HARRISON and GLOVER, JJ., agree.

*Pinnacle Law Firm, PLLC*, by: *Matthew D. Campbell*, for appellants.

*Daily & Woods, P.L.L.C.*, by: *Douglas M. Carson*, *Wyman R. Wade, Jr.*, and *Colby T. Roe*, for appellees.