SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–16–93

| | |
|---|---|
| ADDISEN ENTMEIER<br><br>                    APPELLANT<br><br>V.<br><br><br>CITY OF FORT SMITH, ARKANSAS,<br>ET AL.<br><br>                    APPELLEES | **Opinion Delivered:** November 2, 2016<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT, FORT<br>SMITH DISTRICT<br>[NO. 66FCV-13-1196-I]<br><br>HONORABLE STEPHEN TABOR,<br>JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Appellant, Addisen Entmeier, brings this appeal from an order of the Sebastian County Circuit Court granting appellees' motion for summary judgment in this case, which was brought under the Arkansas Whistle-Blower Act (the Act). Appellees are the City of Fort Smith; Kevin D. Lindsey (chief of the Fort Smith Police Department); and Alan Haney, Brandon Bird, Chris Harris, Dewey Young, Gerald Schaefer, and Chris Boyd, Sr. (all officers of the Fort Smith Police Department). The court found that Entmeier failed to meet proof with proof—relying instead on "innuendo and supposition" to support his whistle-blower claim—in the face of appellees' evidence that Entmeier was fired for poor job performance and not because he was a whistle-blower. On appeal, Entmeier contends that the circuit court erred in failing to grant additional time to complete discovery before ruling on the motion for summary judgment and that the court misapplied the burdens, standards, and analysis

required to grant a motion for summary judgment. We find no error, and we affirm the circuit court's order.

Entmeier began working for the Fort Smith Police Department (the Department) in November 2010 as a civilian employee in a "non-uniformed" position. He worked in the Communications Unit, also known as Dispatch or 911, until March 2011. At that point, one of his supervisors, Sergeant Waymon Parker, told Entmeier that he was behind in his training and had a limited time frame to improve or that he could transfer to the Meter Enforcement Unit. Entmeier testified[1] that he had a "gut feeling" that he was being offered a transfer because he had "made someone mad." Entmeier transferred to the Meter Enforcement Unit in April 2011, where he remained until July 2012.

The events surrounding Entmeier's claimed status as a whistle-blower occurred in 2011 during an investigation of the Communications Unit conducted by Sergeant Dawn Sprayberry with the Professional Standards Unit. The purpose of the investigation was to examine the reasons for the unit's high turnover and general personnel problems. At the time of the investigation, Entmeier had already transferred into the Meter Enforcement Unit, but he was interviewed on May 26, 2011, regarding his experience working in Dispatch. Entmeier worked under Emily Haney while in Dispatch. Ms. Haney is married to Captain Alan Haney, one of the appellees herein. On March 6, 2012, Captain Haney improperly

---

[1]No depositions were taken in this case; however, depositions were taken in another whistle-blower case against the City of Fort Smith that was proceeding at the same time. *See Bales v. City of Fort Smith*, 2016 Ark. App. 491, ___ S.W.3d ___. Some of the issues and evidence in that case dovetail with this case.

accessed Sergeant Sprayberry's investigatory files without authorization, which included Entmeier's interview statement.

In June 2012, Entmeier applied to become an officer with the Department. Entmeier had suffered a panic attack at work in February 2012 while in the Meter Enforcement Unit, and he failed to include this information on the medical form in his application. During a polygraph examination, the discrepancy was discovered, and a review board conducted an investigation regarding whether his failure to disclose the attack prevented him from being accepted into probationary-officer training. Captain Haney was on the review board, which found no wrongdoing and accepted Entmeier as a probationary officer. Entmeier's year-long probationary training began in July 2012.

After the initial training, Entmeier began his "field training" in November 2012, which continued until March 2013, when he was assigned to a troop and permitted to work on his own. He was initially assigned to Troop 1, but before he began, he voluntarily agreed to transfer into Troop 3 in order to help another officer who wanted to switch for personal reasons. Captain Haney was the commander of Troop 3. From March through June, Entmeier's supervisory officers in Troop 3, appellees herein, reported numerous problems with his job performance. Entmeier was terminated on July 5, 2013, less than two weeks before his probationary training period was scheduled to end.

On December 26, 2013, Entmeier filed a complaint under the Arkansas Whistle-Blower Act, alleging that he had been fired from Captain Haney's Troop 3 in retaliation for accusing Ms. Haney of abuse of overtime in his interview during the 2011 investigation of



the Communications Unit. No discovery was conducted, and on June 3, 2015, appellees filed a motion for summary judgment contending that Entmeier could not show facts beyond mere speculation and conjecture to support the claim that he had been fired because he had engaged in whistle-blowing activity. They contended that, even if Entemeier could prove that he was a whistle-blower, he had been terminated for poor job performance, not for any alleged whistle-blowing activity. Entmeier responded that the motion was premature and prevented him from engaging in discovery. He also argued that the motion was based on self-serving affidavits that were false or intentionally misleading and that the motion ignored genuine issues of material fact. The circuit court granted appellees' motion, finding that Entemeier had failed to sufficiently meet proof with proof and that there were no genuine issues of material fact.

## I. *Discovery*

For his first point on appeal, Entmeier argues that the circuit court erred in failing to grant him additional time to complete discovery before ruling on appellees' motion. The circuit court rejected Entmeier's argument, stating that the motion for summary judgment had been filed almost eighteen months after Entmeier had initiated the lawsuit and that no discovery efforts had been conducted during that time. The court recognized that Entmeier did not file discovery until a month after the motion for summary judgment had been filed. The court also noted that defense counsel had stated at the hearing that appellees had assembled and made available to Entemeier thousands of pages of discovery documents, which, as of the date of the hearing in September 2015, had not been reviewed by anyone on

4

 

Entmeier's behalf. The court found that the motion was not premature.

A trial court has wide discretion in matters pertaining to discovery, and we will not reverse its decision absent an abuse of that discretion. *Lancaster v. Red Robin Int'l, Inc.*, 2011 Ark. App. 706, at 11, 386 S.W.3d 662, 670. In support of his argument that the motion was premature, Entmeier cites our supreme court's decision in *First National Bank v. Newport Hospital & Clinic, Inc.*, 281 Ark. 332, 663 S.W.2d 742 (1984). In that case, the court reversed the trial court's summary judgment, holding that the motion should not have been granted until discovery that was "clearly pertinent" to the issues in the case had been completed. *Id.* at 335, 663 S.W.2d at 743. There, the defendants in a medical-malpractice case filed motions for summary judgment *after* the plaintiff had requested production of certain "pertinent" medical records. *Id.* The supreme court specifically noted that there had been "no suggestion of a lack of diligence by the plaintiff in discovery efforts." *Id.* Here, in contrast, no discovery was conducted for eighteen months, and none was propounded until after appellees' motion for summary judgment had been filed. Finally, Entmeier did not review the documents that had been provided to him before the summary judgment hearing. On this record, we hold that the circuit court did not abuse its discretion in refusing to withhold its ruling on the motion to allow Entmeier to conduct additional discovery.

## II. *Summary Judgment*

Before we turn to the circuit court's ruling, we set forth the relevant provisions of the Arkansas Whistle-Blower Act, found in Arkansas Code Annotated sections 21-1-601 et seq. (Repl. 2004 & Supp. 2015). Pursuant to the Act,

5

(a)(1) A public employer shall not take adverse action against a public employee *because* the public employee or a person authorized to act on behalf of the public employee communicates in good faith to an appropriate authority:

(A) The existence of waste of public funds, property, or manpower, including federal funds, property, or manpower administered or controlled by a public employer; or

(B) A violation or suspected violation of a law, rule, or regulation adopted under the law of this state or a political subdivision of the state.

Ark. Code Ann. § 21-1-603 (emphasis added).

To prevail in an action brought under this Act, the public employee must show that he has suffered an adverse action because he engaged or intended to engage in an activity protected under the Act. Ark. Code Ann. § 21-1-604(c). The Act also provides that a public employer has an affirmative defense to a whistle-blower lawsuit if the adverse action taken against the employee "was due to employee misconduct, poor job performance, or a reduction in workforce unrelated to a communication made pursuant to § 21-1-603." Ark. Code Ann. § 21-1-604(e)(1).

Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Gallas v. Alexander*, 371 Ark. 106, 114, 263 S.W.3d 494, 501 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Bingham v. C & L Elec. Coop.*, 2015 Ark. App. 237, at 4, 459 S.W.3d 831, 833. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact

unanswered. *Town of Gilbert v. Fruehauf*, 2013 Ark. App. 17, at 2, 425 S.W.3d 816, 817. Finally, when evaluating evidence in a motion for summary judgment, we must resolve all doubts and inferences against the moving party. *Quarles v. Courtyard Gardens Health & Rehab., LLC*, 2016 Ark. 112, at 8, 488 S.W.3d 513, 519.

Entmeier argues that the circuit court improperly shifted the burden of proof to him and failed to resolve all doubts and inferences against appellees. We disagree. Entmeier alleged that he was terminated for communicating in good faith to the Office of Professional Standards regarding the waste of public funds. Specifically, he alleges in his complaint that the information he provided in his interview regarding overtime waste by Emily Haney was improperly discovered by Captain Haney and that, because of this, he was terminated while under Captain Haney's supervision in Troop 3. To support his whistle-blower status, Entmeier points to the following statement from his 29-page interview:

> Personally, I think that they get so much overtime in there, and then, you know—say I work in there, and I'm a dispatcher. We're shorthanded, get all this overtime, you're supposed to be making $30,000 a year. You're making $80,000 a year because you're getting all this overtime. Hey, if we all get together and we scare off all these people or, you know, we try to fail them any way we can, then we'll keep 'em from filling these slots up to where we don't lose pay.

In response, appellees alleged in their motion that Entmeier was not fired because he was a whistle-blower but because of poor job performance. Their motion for summary judgment refuting Entmeier's allegations that they violated the Act included depositions taken in a separate whistle-blower case that concerned many of the same underlying facts. *See Bales*, *supra*. Appellees also attached the affidavits of the parties and several other witnesses with knowledge about Entmeier and his employment with the Department. These documents

contained abundant evidence supporting appellees' affirmative defense that Entmeier was not terminated because he was a whistle-blower but because of his own poor job performance. Once the moving party makes a prima facie showing of entitlement, the opposing party may not rest upon mere allegations or denials, but must "meet proof with proof" and set forth specific facts showing that there is a genuine issue for trial. *Wirth v. Reynolds Metals Co.*, 58 Ark. App. 161, 166, 947 S.W.2d 401, 403–04 (1997).

Appellees presented the following evidence to support their motion. First, appellees presented Entmeier's deposition testimony in which he admitted to various performance issues. First, he testified that when he was offered the transfer from Dispatch to the Meter Enforcement Unit, he was told that he would be terminated if he did not either improve in four weeks or transfer to the Meter Enforcement Unit. He admitted that he chose to transfer rather than attempt improvement. He also testified that he had suffered a panic attack at work while working in the Meter Enforcement Unit in February 2012. He admitted that he had lied in his application about the panic attack but then recognized that he had been hired as a probationary officer in spite of this. Captain Haney was on the review board that investigated this issue and approved of Entmeier's hiring in July 2012. This occurred more than a year after Entmeier's alleged whistle-blowing activity and several months after Captain Haney had improperly obtained access to the file.

Entmeier also testified that when he began field training for probationary officers in November 2012, he worked with Jason Thompson and Daniel Honeycutt. He said that Honeycutt had pointed out various areas in which Entmeier was having problems, including

geographical awareness—that is, taking the shortest route to a call—and being able to identify specific laws. Entmeier remembered an incident in which Thompson had counseled him about issuing the wrong citation and several incidents when Thompson had counseled him regarding officer safety. He also recalled having been counseled for failing to turn on his police cruiser camera and failing to turn on his uniform mic so that his conversations were recorded.

Entmeier began working in Troop 3 under Captain Haney in March 2013. He testified regarding several arrests in May that Officers Bird and Young told him were handled improperly. They suggested that he become more familiar with the loitering statute. On another arrest, Entmeier had overlooked some drug paraphernalia on the subject when he patted him down, which was later discovered on the subject at the jail. Entmeier testified regarding numerous counseling sessions, including the "bad arrest" of a man in the curtilage of his business, during which Captain Haney told Entmeier to study the laws of disorderly conduct, public intoxication, loitering, and obstructing governmental operations. Regarding a subsequent counseling session on June 5, Entmeier testified that his supervisors informed him that he was "doing poorly," that he needed more assistance than his peers, and that he was calling the sergeants too much for direction. They asked him whether he had been studying the laws. Captain Haney told Entmeier that he was on a "short leash" and had only five weeks to improve performance before the end of the probationary period or he would face termination.

He testified that he was counseled again by Officers Bird and Young concerning the unlawful arrest of a drunk female who was passed out on a couch. He removed her from the

9

home and then arrested her for public intoxication. Officers Bird and Young told Entmeier that the arrest was unlawful and directed him to call the prosecutor to have the charge nolle prossed. Entmeier testified that he thought he was being treated unfairly because they "kept conferencing with me," but he admitted that the counseling sessions were about "legitimate things"—"learning the laws and becoming more familiar with the Department's policies."

Each affidavit attached to appellees' motion also detailed a variety of problems with Entmeier's job performance while he was under appellees' supervision in Troop 3. Appellee Sergeant Brandon Bird detailed issues with Entmeier occurring from March through June 2013. Most of these concerned Entmeier's lack of knowledge regarding the criminal laws and procedure, his inability to "rationalize his way though complex problems," and his unwillingness or confusion in taking direction from senior officers.

Appellee Chris Boyd, Sr., a major in charge of the Patrol Division, stated in his affidavit that he was aware of concerns from several supervisors about Entmeier's performance. He stated that Entmeier was having difficulties making proper decisions during encounters with the general public and with suspects, was having continual shortcomings regarding knowledge and application of the law, and was making mistakes that someone with his level of training and experience should not have been making.

Captain Haney emphasized in his affidavit and notes that Entmeier was not sufficiently familiar with the criminal code and the common charges a patrol officer uses on a daily basis. In spite of Captain Haney's continual pleas to Entmeier to study the laws and learn the points for each arrest, Entmeier had not made any improvements. Sergeant Chris Harris, who

conducted a "ride along" to evaluate Entmeier from June 27–30, 2013, stated that Entmeier was unable to take the most direct routes to call locations, did not appear able to thoroughly investigate a complex case or see multiple ways to handle a situation, and seemed confused and unsure about how to handle the pursuit of a suspect. Sergeant Harris expressed reservations that remedial training would be successful given Entmeier's failure to embrace past efforts to train him from his chain of command.

Finally, Chief Kevin Lindsey, the chief of police for the City of Fort Smith, stated that his decision to terminate Entmeier was based on information he received from Entmeier's chain of command. The decision was not based on any single factor but on the totality of the information. He stated that when he was approached by Sergeant Rick Entmeier, Entmeier's father, and another officer, Sergeant Don Paul Bales, regarding Entmeier's having been terminated based on "false information," he instructed the Office of Professional Standards to investigate the claim. He reviewed the investigation file and determined that there were no facts on which to base a conclusion that Entmeier had been terminated for any reason other than his inadequate job performance as a probationary training officer.

Captain Jarrard Copeland—who, as the head of the Office of Professional Standards, investigated Entmeier's termination—collected notes from Officers Thompson and Honeycutt, who had conducted Entmeier's field training from November 2012 through March 2013 before he began working in Troop 3. The officers' comments from the training included numerous concerns regarding Entmeier's lack of geographical awareness, his failure to understand the law, and his failure to issue the proper citation. The following are only a

few examples of these comments, which continued through March.

> **Honeycutt**: 11-26-12—"Still having trouble locating addresses. He needs to improve his geographical awareness." 12-19-12—"Needs to continue to improve his geographical awareness." 2-4-13—"I explained to Addisen that he should not be making these mistakes at this point in his training." 2-10-13—"He did not take the most immediate route which caused a delay in our response times." 2-11-13—"He did have some problems identifying the specific law that was broken. I instructed him to study the most common laws we deal with and familiarize himself with them."

> **Thompson**: 1-1-13—"I still had to assist him in taking the shortest route to calls." 2-13-13—"He issued the wrong citation on an accident . . .." 2-24-13—"He did not know how to handle a child custody case. He called another officer for assistance."

In response to appellees' motion and documentation, Entmeier provided the affidavit of Officer Wendall Sampson; the affidavit of his father, Sergeant Entmeier; and the affidavit of Sergeant Don Bales, all from the case of *Bales v. City of Fort Smith*, 2016 Ark. App. 491, ___ S.W.3d ___. None of these officers had worked with Entmeier during his probationary training period and none had any first-hand knowledge of his job performance. Sergeant Entmeier stated that he had been told that his son was "messing up left and right." He also said that Captain Ed Smalley had informed him that he was not aware of any issues with his son's training. Captain Smalley was the Police Training Coordinator, but there is no evidence that he ever worked with Entmeier directly, and Captain Smalley did not provide an affidavit.

Sergeant Bales stated in his affidavit that Entmeier had told him that he had been passed by both of his training officers, Honeycutt and Thompson, but that he had been informed by Sergeant Bird, Sergeant Young, and Captain Haney that his performance was not up to standards and that he would be fired if he did not make immediate improvements. Sergeant Bales stated that, based on his knowledge of the probationary officer training, if Entmeier's

allegations were true, the program was not being followed properly. Sergeant Bales, however, testified in his deposition that he had never personally worked with Entmeier, evaluated him, or overseen him in any way concerning his job performance. Neither Sergeant Bales's deposition nor his affidavit explained the specific rules of the training program that he alleged had been violated. Further, none of Entmeier's documents provide any evidence other than speculation that he was terminated for statements he had made in his interview and not for the many performance problems he had experienced during his entire probationary-officer training. Entmeier did not provide any depositions or affidavits from an officer who had directly supervised him during his probationary training year, or any other individual with direct knowledge of his job performance, to refute appellees' extensive evidence on this issue.

The circuit court found that Entmeier had failed to meet proof with proof. The court found the statements of Entmeier's father to be mere hearsay, uncorroborated by those who allegedly had made the statements. The court also noted that Entmeier himself testified to many of the performance issues and that he had been silent regarding these performance issues in his response to appellees' evidence. Again, the court found that Entmeier had failed to meet proof with proof and had relied on innuendo and supposition to support his claims.

The circuit court determined as a matter of law that appellees had an affirmative defense to Entmeier's claim and that his termination was due to poor job performance. Entmeier has failed to demonstrate the existence of a genuine issue of material fact that he was not terminated for poor job performance. Accordingly, we affirm the circuit court's order granting summary judgment.

 

Affirmed.

KINARD and VAUGHT, JJ., agree.

*Pinnacle Law Firm, PLLC*, by: *Matthew D. Campbell*, for appellant.

*Daily & Woods, P.L.L.C.*, by: *Douglas M. Carson*, *Wyman R. Wade, Jr.*, and *Colby T. Roe*, for appellees.